## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY, TRENTON DIVISION

| | |
|---|---|
| MICHAEL DOBKIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NRG ENERGY, INC., a Delaware corporation, and NRG RESIDENTIAL SOLAR SOLUTIONS LLC, a Delaware limited liability company,<br><br>*Defendants*. | Case No.: |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Stefan Coleman (SC6365)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
Alicia E. Hwang*
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Classes*

Plaintiff Michael Dobkin brings this Class Action Complaint and Demand for Jury Trial against NRG Energy, Inc., and its wholly-owned subsidiary, NRG Residential Solar Solutions LLC (together referred to in the singular as "NRG" or "Defendant"), to stop its practice of having unauthorized calls made to the telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.       Defendant NRG is a major commercial and residential energy provider and the sixth-largest residential solar installer in the United States. Believing "that the U.S. energy industry is [] increasingly impacted by the long-term societal trend towards sustainability," NRG actively seeks to "maximize stockholder value" by "aggressively positioning the Company to meet the market's increasing demand for sustainable, low carbon and portable energy solutions."[1]

2.       Unfortunately for consumers, NRG's "aggressive positioning" strategy includes a pervasive telemarketing campaign through which it and/or its agents placed telephone calls, without consent, to tens of thousands of individuals,

---

[1]       NRG Energy, Inc., *Annual Report (Form 10-K)*, at 8 (Feb. 27, 2015), *available at* http://www.sec.gov/Archives/edgar/data/1013871/00010138711 5000004/a201410-k.htm (last accessed June 22, 2015).

many of whom have their numbers listed on the National Do Not Call Registry.

3.     Worse, during these calls, Defendant and/or its agents routinely misrepresent themselves as working with fictional or unrelated nonprofit and governmental entities like the "Department of Solar Energy" or the "Clean Planet Program" in deliberate attempts to mislead consumers. Further, rather than use live representatives, some of the calls placed by Defendant and/or its agents feature artificial or prerecorded voices—commonly known as "robocalls." Furthermore, Defendant and/or its agents disable or obscure certain menu prompts on these robocalls so that it becomes difficult or impossible for consumers to opt-out of receiving future calls from them.

4.     The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), was enacted to stop the exact types of calls alleged here.

5.     By making the telemarking calls at issue in this Complaint, or by having such calls made on its behalf, Defendant has violated and continues to violate numerous provisions of the TCPA. These violations caused Plaintiff and members of three putative Classes of consumers (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the costs for the receipt of such telephone calls.

6.     In response to Defendant's unlawful conduct, Plaintiff brings the

instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited

phone call activities and an award of statutory damages to the members of the

Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7.     Plaintiff Michael Dobkin is a natural person and citizen of the State of

New Jersey.

8.     Defendant NRG Energy, Inc., is a corporation existing under the laws

of the State of Delaware with its principal place of business located at 211

Carnegie Center, Princeton, New Jersey 08540. It conducts business throughout

this District, the State of New Jersey, and the United States.

9.     Defendant NRG Residential Solar Solutions LLC is a limited liability

company existing under the laws of the State of Delaware with its principal place

of business located at 2333 New Jersey Highway 34, Manasquan, New Jersey

08736. It conducts business throughout this District, the State of New Jersey, and

the United States.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as

this action arises under the TCPA, which is a federal statute. This Court has

personal jurisdiction over NRG because it conducts significant amounts of

business transactions within this District and because the wrongful conduct giving

rise to this case occurred in, was directed to, and/or emanated from this District.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because NRG is headquartered here, because NRG conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

12.    In or around 2014, NRG launched a telemarketing campaign to sell and schedule in-home solar installations.

13.    Unfortunately, Defendant operated this campaign by having telemarketing calls placed to consumers' telephones using automatic dialers and/or by having robocalls placed to phone numbers that were never voluntarily provided by the call recipients. These calls were made using equipment with the capacity to store or produce telephone numbers using random or sequential number generators and dial such numbers, *en masse*. Accordingly, Defendant and/or its agents call large numbers of individuals simultaneously and without human intervention, often just to distribute robotic messages using artificial or prerecorded voices. Making matters worse, many of Defendant's calls are made to numbers listed on the National Do Not Call Registry (which is a national database that exists for the sole purpose of empowering consumers to avoid unwanted calls exactly like those

alleged here). Others are made to private cellphone numbers. Ultimately, none are placed with prior express consent.

14.     Not surprisingly, consumers have repeatedly spoken out against Defendant's pervasive and widespread telemarketing practices:[2]

- "Although I am on the do not call list I have received 4 calls in the last two days from someone representing NRG.";

- "I got a call on my cell phone from this number at 5:45 pm. It was a recorded voice telling me I could save on my energy bill and prevent 'the rate increase' which is coming. My phone number is on the Do Not Call List. As if that means anything!";

- "Called me from this number, two other numbers, and blocked numbers all today. At least 20 times!  And it's only 11:47am!";

- "This number has been calling me almost everyday for a month.";

- "Got two calls from this number within a 5 minute span."; and

- "[T]hese . . . people have called I swear 15 times in 1 day when we have answered they say nothing and this has been going on for weeks now very very annoying."

15.     Consumers have also lashed out against Defendant's deliberate use of ineffective opt-out mechanisms and fictitious affiliations with made-up or unrelated governmental or non-profit organizations:[3]

- "The agent claims that they have a right to call because they are

---

[2]     *See*, *e.g.*, 800notes.com, http://800notes.com/Phone.aspx (last visited July 1, 2015) (querying NRG numbers 908-279-1984, 732-820-1041, 856-282-5094, and 713-388-6972); WhoCallsMe.com, http://whocallsme.com/Phone-Number.aspx (last visited July 1, 2015) (same); Facebook Page for NRG Home Solar, https://www.facebook.com/nrghomesolar/posts/338922872942740 (last visited July 1, 2015) (showing comments relating to NRG number 732-820-1041).

[3]     *Id*.

calling on behalf of a government funded program.";

- "Just got a call from these scammers.  I waited out the message and pressed 1 to tell them that they're violating the Federal Do Not Call laws, and after listening to another long message I was told their mailbox was full.  ARRGGHHHH.";

- "[N]ot our governor but some company going by clean planet program, [I] have had over 30 calls from them in a month some times they let it ring 2 times and hang up hours latter we get barbered with more scam, supposed if you listens then hit 3 they will stop calling but that fails to work."; and

- "Robo call—Offer from the 'Department of Solar Energy' (yeah right!) to save money on your electricity by installing Solar Panels."

16.     Defendant knowingly places telemarketing calls, or has such calls placed on its behalf, without the prior express consent of the call recipients, and knowingly continues to have such calls placed after receiving requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## PLAINTIFF DOBKIN'S EXPERIENCE

17.     On December 28, 2011, Plaintiff registered his landline telephone number with the National Do Not Call Registry for the express purpose of avoiding telemarketing calls like the ones described in this Complaint.

18.     Nonetheless, on January 9, 2015, Plaintiff's landline received a call from the number (908) 279-1984. When Plaintiff answered the call, he heard a long pause while he waited to be connected to a live operator. Once connected, the

live operator claimed to be calling on behalf of a government program called the "Clean Planet Program" and attempted to ask Plaintiff a series of "qualifying" questions. Plaintiff asked for information about the company's identity in order to better ascertain who was behind the unauthorized call, at which point the live operator revealed that he in fact worked with "NRG Energy." Plaintiff then specifically asked to be placed on the internal do not call list.

19.    On March 9, 2015, Plaintiff's landline received a call from the number (213) 968-1918. This time a different operator attempted to ask Plaintiff an identical series of "qualifying" questions and tried to schedule an in-home visit for NRG. Plaintiff did not schedule a visit and ended the call.

20.    On March 10, 2015, Plaintiff's landline received a call from the number (732) 820-1041. Plaintiff did not answer. A telemarketer left a voicemail stating that he was calling on behalf of "NRG Home Solar" and asking Plaintiff to schedule an appointment for a "free evaluation." Plaintiff did not return the call and did not arrange an appointment.

21.    Later that same day, Plaintiff's landline received another call from the number (732) 820-1041. Again, Plaintiff did not answer. A telemarketer left a voicemail stating that she was calling on behalf of "NRG Home Solar" and asking Plaintiff to call back in order to "confirm [his] appointment." Plaintiff had never arranged for an appointment and did not return the call.

8

22.     On April 14, 2015, a robocall was made to Plaintiff's private cellphone line from the number (856) 282-5094. The recorded greeting claimed to be calling on behalf of the "Clean Planet Program." Plaintiff pressed "1" to connect to a live representative, who claimed that she was calling on behalf of a non-profit organization. She later stated that she was actually working with "NRG Energy."

23.     Plaintiff's landline received calls from the number (713) 388-6972 on April 24, April 27, April 29, and May 9, 2015. When Plaintiff answered one of these calls, he was connected to a live operator who directed him to research "NRG Home Solar."

24.     On May 13, 2015, Plaintiff's landline received a call from the number (607) 735-0885. The live operator directed Plaintiff to explore www.nrghomesolar.com, a website owned and operated by NRG. Plaintiff again ended the call and again asked to be put on the internal do not call list.

25.     Plaintiff never provided his prior express consent to receive calls from Defendant and has not had any type of prior business relationship with Defendant.

## CLASS ALLEGATIONS

26.     **Class Definitions**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of himself and three Classes of similarly situated individuals, defined as follows:

**Do Not Call Class**: All individuals in the United States who received more than one telephone call made by or on behalf of NRG within a 12-month period: (1) promoting NRG's products or services; (2) at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each call; and (3) where neither NRG nor its agents had any current record of express written consent to place such calls at the times such calls were made.

**Robocall Class**: All individuals in the United States who received a telephone call made by or on behalf of NRG: (1) promoting NRG's products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither NRG nor its agents had any current record of prior express written consent to place such call at the times such call was made.

**Autodial Class**: All individuals in the United States who received a telephone call made by or on behalf of NRG: (1) promoting NRG's products or services; (2) at a cellular telephone number; (3) where such call was made using an automatic telephone dialing system; and (4) where neither NRG nor its agents had no current record of prior express written consent to place such call at the time such call was made.

The following people are excluded from the Do Not Call Class, Robocall Class, and Autodial Class (collectively, the "Classes"): (1) any Judge or Magistrate presiding over this action and members of their families; (2) NRG; NRG's subsidiaries, successors, and predecessors; any entity in which NRG has a controlling interest; and the current or former employees, officers, and directors of NRG or its subsidiaries, successors, predecessors, or any entity in which NRG has a controlling interest; (3) persons who properly execute and file a timely request

10

for exclusion from any of the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

27.    **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant had thousands of telephone calls placed to consumers who fall into each of the definitions of the Classes. Members of the Classes can be easily identified through Defendant's records.

28.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

**The Do Not Call Class**:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant and/or its agents systematically made telephone calls to consumers who did not previously provide Defendant or its agents with prior express consent to receive such calls;

11

(c)   Whether Defendant and/or its agents made more than one telephone call within a 12-month period to consumers whose telephone numbers were registered with the National Do Not Call Registry (for at least thirty days, at the time of each call); and

(d)   Whether Plaintiff and members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**Robocall Class**:

(a)   Whether Defendant's conduct violated the TCPA;

(b)   Whether Defendant and/or its agents systematically made telephone calls to consumers who did not previously provide Defendant or its agents with prior express consent to receive such telephone calls;

(c)   Whether Defendant's telephone calls featured an artificial or prerecorded voice; and

(d)   Whether Plaintiff and the members of the Robocall Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**Autodial Class**:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant and/or its agents systematically made telephone calls to consumers who did not previously provide Defendant or its agents with prior express consent to receive such telephone calls;

    (c)    Whether Defendant's calls were made to consumers' cellular telephones utilizing an automatic telephone dialing system; and

    (d)    Whether Plaintiff and the members of the Autodial Class are entitled to treble damages based on the willfulness of Defendant's conduct.

29.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct toward Plaintiff and the Classes.

30.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

31.    **Policies Generally Applicable to the Classes**: This class action is

appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of all the Classes and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendant's practices challenged herein apply to and affect each of the members of each of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to each of the Classes as a whole, not on facts or law applicable only to Plaintiff.

32.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of each of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of each of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

14

presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Do Not Call Class)

33.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

35.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

36.     47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

37.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

38.    Defendant and/or its agents made more than one unsolicited telephone

call to Plaintiff and members of the Do Not Call Class within a 12-month period

without having prior express written consent to place such calls. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. Plaintiff and members of the Do Not Call Class never provided any form of consent to receive telephone calls from Defendant or its agents and/or neither Defendant nor its agents have any record of consent to place telemarketing calls to them.

39.    Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls.

40.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the members of the Do Not Call Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the members of the Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

41.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

statutory damages recoverable by Plaintiff and the members of the Do Not Call

Class.

### SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Robocall Class)

42.     Plaintiff incorporates the foregoing allegations as if fully set forth

herein.

43.     Defendant and/or its agents made unsolicited and unwanted

telemarketing calls to telephone numbers belonging to Plaintiff and the other

members of the Robocall Class—without their prior express consent—in an effort

to sell energy services.

44.     These calls featured artificial or prerecorded voices.

45.     By having unsolicited telephone calls made to Plaintiff's and the

Robocall Class members' telephones without prior express written consent, and by

having artificial or prerecorded voices used when placing such calls, Defendant

violated 47 U.S.C. § 227(b)(1)(A)(iii).

46.     As a result of Defendant's unlawful conduct, Plaintiff and the

members of the Robocall Class suffered actual damages in the form of monies paid

to receive the unsolicited telephone calls on their cellular phones and, under 47

U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in

damages for each such violation of the TCPA.

47.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

### THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Autodial Class)

48.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.     Defendant and/or its agents made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodial Class—without their prior express consent—in an effort to sell energy services.

50.     Defendant had these telephone calls placed using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

51.     Defendant had the telephone calls placed using equipment that made the telephone calls to Plaintiff and other members of the Autodial Class simultaneously and without human intervention.

52.     By having unsolicited telephone calls made to Plaintiff's and the

Autodial Class members' cellular telephones without prior express consent, and by

having equipment used that had the capacity to store or produce telephone numbers

to be called using a random or sequential number generator, and/or receive and

store lists of phone numbers, and to dial such numbers, *en masse*, Defendant

violated 47 U.S.C. § 227(b)(1)(A)(iii).

53.     As a result of Defendant's unlawful conduct, Plaintiff and the

members of the Autodial Class suffered actual damages in the form of monies paid

to receive the unsolicited telephone calls on their cellular phones and, under 47

U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in

damages for each such violation of the TCPA.

54.     To the extent Defendant's misconduct is determined to be willful and

knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of

statutory damages recoverable by Plaintiff and the other members of the Autodial

Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Dobkin, individually and on behalf of the

Classes, prays for the following relief:

A.     An order certifying each of the Classes as defined above, appointing

Plaintiff Michael Dobkin as representative of each of the Classes, and appointing

his counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate

47 U.S.C. § 227;

C.     An award of injunctive and other equitable relief as necessary to

protect the interests of the Classes, including, *inter alia*, an order prohibiting

Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of actual and statutory damages;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**MICHAEL DOBKIN**, individually and on
behalf of all others similarly situated,

Dated: July 1, 2015              By:   s/ Stefan Coleman
                                       One of Plaintiff's Attorneys

                                       Stefan Coleman (SC6365)
                                       law@stefancoleman.com
                                       LAW OFFICES OF STEFAN COLEMAN, LLC
                                       1072 Madison Avenue, Suite 1
                                       Lakewood, New Jersey 08701
                                       Tel: 877.333.9427
                                       Fax: 888.498.8946

22

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
Alicia E. Hwang*
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.