## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY, TRENTON DIVISION

| | |
|---|---|
| MICHAEL DOBKIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>NRG ENERGY, INC., a Delaware corporation, and NRG RESIDENTIAL SOLAR SOLUTIONS LLC, a Delaware limited liability company,<br><br>*Defendants*. | Case No: 3:15-cv-05089-FLW<br><br><br>Hon. Freda L. Wolfson |

## FIRST AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Stefan Coleman (SC6365)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Rafey S. Balabanian (*Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (*Pro Hac Vice*)
ascharg@edelson.com
Alicia E. Hwang (*Pro Hac Vice*)
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378


*Attorneys for Plaintiff and the Putative Classes*

Plaintiff Michael Dobkin brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendants NRG Energy, Inc. ("NRG"), and its wholly-owned subsidiary, NRG Residential Solar Solutions LLC ("NRG Solar" and, together with NRG, "Defendants"), to stop their practice of placing unauthorized calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant NRG is a major commercial and residential energy provider and the sixth-largest residential solar installer in the United States. Believing "that the U.S. energy industry is [] increasingly impacted by the long-term societal trend towards sustainability," NRG actively seeks to "maximize stockholder value" by "aggressively positioning the Company to meet the market's increasing demand for sustainable, low carbon and portable energy solutions."[1]

2.      Unfortunately for consumers, NRG's "aggressive positioning" strategy included a pervasive telemarketing campaign through which it—in conjunction with Defendant NRG Solar (NRG's wholly-owned subsidiary that

_____

[1]      NRG Energy, Inc., *Annual Report (Form 10-K)*, at 8 (Feb. 27, 2015), 5000004/a201410-k.htm (last accessed September 2, 2015).

2

coordinates the sale and installation of solar panels for residential use)—places telephone calls without consent, to tens of thousands of individuals, many of whom have their numbers listed on the National Do Not Call Registry.

3. On information and belief, NRG Solar jointly created the telemarketing campaign at issue with NRG and, at all relevant times, operated under NRG's control and supervision.

4. Worse, during these calls, Defendants and/or their agents routinely misrepresented themselves as working with fictional or unrelated nonprofit and governmental entities like the "Department of Solar Energy" or the "Clean Planet Program" in deliberate attempts to mislead consumers. Additionally, rather than use live representatives, some of the calls placed by Defendants and/or their agents feature artificial or prerecorded voices—commonly known as "robocalls." Furthermore, Defendants and/or their agents disable or obscure certain menu prompts on these robocalls so that it becomes difficult or impossible for consumers to opt-out of receiving future calls from them.

5. The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), was enacted to stop the exact types of calls alleged here.

6. By making the telemarking calls at issue in this Complaint, or by having such calls made on their behalf, Defendants have violated and continue to violate numerous provisions of the TCPA. These violations caused Plaintiff and

members of three putative Classes of consumers (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the costs for the receipt of such telephone calls.

7.     In response to Defendants' unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited phone call activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8.     Plaintiff Michael Dobkin is a natural person and citizen of the State of New Jersey.

9.     Defendant NRG Energy, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 211 Carnegie Center, Princeton, New Jersey 08540. It conducts business throughout this District, the State of New Jersey, and the United States.

10.     Defendant NRG Residential Solar Solutions LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 2333 New Jersey Highway 34, Manasquan, New Jersey 08736. It conducts business throughout this District, the State of New Jersey, and the United States.

4

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are headquartered here, conduct significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

13.     In or around 2014, NRG, together with its wholly-owned subsidiary NRG Solar, jointly launched a telemarketing campaign to sell and schedule in-home solar installations.

14.     During Defendants' telemarketing calls, the callers represented that they were calling on behalf of either "NRG Energy" or on behalf of "NRG Home

Solar."[2]

15.     NRG owns, operates, and controls the conduct of NRG Solar, and directly profits from the sales revenue earned by NRG Solar.

16.     NRG and NRG Solar placed the telemarketing calls at issue for the purpose of increasing their sales revenues and profits. At all relevant times, NRG Solar and its agents had actual or apparent authority to act on behalf of NRG, and in fact did so with respect to the telemarketing calls at issue.

17.     Defendants implemented their campaign by using automatic telephone dialing systems and pre-recorded robocalls to place the telemarketing calls at issue to consumers' telephone numbers (both landlines and cell phones) that were never voluntarily provided by the call recipients. These calls were made using dialing equipment that had the capacity to store or produce telephone numbers using random or sequential number generators and dial such numbers, *en masse*.

18.     Accordingly, Defendants and/or their agents called large numbers of consumers simultaneously and without human intervention, often just to distribute robotic messages using artificial or prerecorded voices. Making matters worse, many of these calls were made to numbers listed on the National Do Not Call

---

[2]     On its website, NRG represents that its wholly-owned subsidiary, "NRG Residential Solar Solutions LLC" (i.e., Defendant NRG Solar), is the actual entity that does business as NRG Home Solar. *See* NRG, http://www.nrg.com/home/solar (last visited September 2, 2015).

Registry (which is a national database that exists for the sole purpose of avoiding the unwanted calls exactly like those alleged here). Others were made to private cellphone numbers. Ultimately, none were placed with the prior express written consent of the call recipients.

19.     Not surprisingly, consumers have repeatedly spoken out against Defendants' pervasive and widespread telemarketing practices:[3]

- "Although I am on the do not call list I have received 4 calls in the last two days from someone representing NRG";
- "I got a call on my cell phone from this number at 5:45 pm. It was a recorded voice telling me I could save on my energy bill and prevent 'the rate increase' which is coming. My phone number is on the Do Not Call List. As if that means anything!";
- "Called me from this number, two other numbers, and blocked numbers all today. At least 20 times!  And it's only 11:47am!";
- "This number has been calling me almost everyday for a month";
- "Got two calls from this number within a 5 minute span"; and
- "[T]hese . . . people have called I swear 15 times in 1 day when we have answered they say nothing and this has been going on for weeks now very very annoying."

20.     Consumers have also lashed out against Defendants' deliberate use of ineffective opt-out mechanisms and fictitious affiliations with made-up or

---

[3]     *See, e.g.*, 800notes.com, http://800notes.com/Phone.aspx (last visited September 2, 2015) (querying NRG numbers 908-279-1984, 732-820-1041, 856-282-5094, and 713-388-6972); WhoCallsMe.com, http://whocallsme.com/Phone-Number.aspx (last visited September 2, 2015) (same); Facebook Page for NRG Home Solar, https://www.facebook.com/nrghomesolar/posts/338922872942740 (last visited September 2, 2015) (showing comments relating to NRG number 732-820-1041).

unrelated governmental or non-profit organizations:[4]

- "The agent claims that they have a right to call because they are calling on behalf of a government funded program.";
- "Just got a call from these scammers.  I waited out the message and pressed 1 to tell them that they're violating the Federal Do Not Call laws, and after listening to another long message I was told their mailbox was full.  ARRGGHHHH.";
- "[N]ot our governor but some company going by clean planet program, [I] have had over 30 calls from them in a month some times they let it ring 2 times and hang up hours latter we get barbered with more scam, supposed if you listens then hit 3 they will stop calling but that fails to work."; and
- "Robo call—Offer from the 'Department of Solar Energy' (yeah right!) to save money on your electricity by installing Solar Panels."

21.      Defendants knowingly place telemarketing calls, or have such calls placed on their behalves, without the prior express written consent of the call recipients, and knowingly continue to have such calls placed even after receiving express requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and the members of the putative Classes, but also intentionally and repeatedly violated—and continue to intentionally and repeatedly violate—the TCPA.

## PLAINTIFF DOBKIN'S EXPERIENCE

22.      On December 28, 2011, Plaintiff registered his landline telephone number with the National Do Not Call Registry for the express purpose of avoiding

---

[4]      *Id*.

8

telemarketing calls like the ones described in this Complaint.

23.     Nonetheless, on January 9, 2015, Plaintiff's landline received a call from the number (908) 279-1984. When Plaintiff answered the call, he heard a long pause while he waited to be connected to a live operator. Once connected, the live operator claimed to be calling on behalf of a government program called the "Clean Planet Program" and attempted to ask Plaintiff a series of "qualifying" questions. Plaintiff asked for information about the company's identity in order to better ascertain who was behind the unauthorized call, at which point the live operator revealed that he in fact worked with "NRG Energy." Plaintiff then specifically asked to be placed on the internal do not call list.

24.     On March 9, 2015, Plaintiff's landline received a call from the number (213) 968-1918. This time a different operator attempted to ask Plaintiff an identical series of "qualifying" questions and tried to schedule an in-home visit for a solar installation. Plaintiff did not schedule a visit and ended the call.

25.     On March 10, 2015, Plaintiff's landline received a call from the number (732) 820-1041. Plaintiff did not answer. A telemarketer left a voicemail stating that he was calling on behalf of "NRG Home Solar" and asking Plaintiff to schedule an appointment for a "free evaluation." Plaintiff did not return the call and did not arrange an appointment.

26.     Later that same day, Plaintiff's landline received another call from the

9

number (732) 820-1041. Again, Plaintiff did not answer. A telemarketer left a voicemail stating that she was calling on behalf of "NRG Home Solar" and asking Plaintiff to call back in order to "confirm [his] appointment." Plaintiff had never arranged for an appointment and did not return the call.

27.     On April 14, 2015, a robocall was made to Plaintiff's private cellphone line from the number (856) 282-5094. The recorded greeting claimed to be calling on behalf of the "Clean Planet Program." Plaintiff pressed "1" to connect to a live representative, who claimed that she was calling on behalf of a non-profit organization. She later stated that she was actually working with "NRG Energy."

28.     Plaintiff's landline received calls from the number (713) 388-6972 on April 24, April 27, April 29, and May 9, 2015. When Plaintiff answered one of these calls, he was connected to a live operator who directed him to research "NRG Home Solar."

29.     On May 13, 2015, Plaintiff's landline received a call from the number (607) 735-0885. The live operator directed Plaintiff to explore www.nrghomesolar.com, a website owned and operated by NRG and/or NRG Solar. Plaintiff again ended the call and again asked to be put on the internal do not call list.

30.     Plaintiff never provided his prior express written consent to receive

10

calls from Defendants and has not had any type of prior business relationship with

Defendants.

## CLASS ALLEGATIONS

31.    **Class Definitions**: Plaintiff brings this action pursuant to Fed. R. Civ.

P. 23 on behalf of himself and three Classes of similarly situated individuals,

defined as follows:

> **Do Not Call Class**: All individuals in the United States who received more than one telephone call made by or on behalf of Defendants within a 12-month period: (1) promoting Defendants' products or services; (2) at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each call; and (3) where neither Defendants nor their agents had any current record of express written consent to place such calls at the times such calls were made.

> **Robocall Class**: All individuals in the United States who received a telephone call made by or on behalf of Defendants: (1) promoting Defendants' products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither Defendants nor their agents had any current record of prior express written consent to place such call at the times such call was made.

> **Autodial Class**: All individuals in the United States who received a telephone call made by or on behalf of Defendants: (1) promoting Defendants' products or services; (2) at a cellular telephone number; (3) where such call was made using an automatic telephone dialing system; and (4) where neither Defendants nor their agents had any current record of prior express written consent to place such call at the time such call was made.

> The following people are excluded from the Do Not Call Class, Robocall

Class, and Autodial Class (collectively, the "Classes"): (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendants;

Defendants' subsidiaries, successors, and predecessors; any entity in which

Defendants have a controlling interest; and the current or former employees,

officers, and directors of Defendants or their subsidiaries, successors, predecessors,

or any entity in which Defendants have a controlling interest; (3) persons who

properly execute and file a timely request for exclusion from any of the Classes;

(4) persons whose claims in this matter have been finally adjudicated on the merits

or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the

legal representatives, successors, and assigns of any such excluded persons.

32.    **Numerosity**: The exact sizes of the Classes are unknown and not

available to Plaintiff at this time, but it is clear that individual joinder is

impracticable. On information and belief, Defendants had thousands of telephone

calls placed to consumers who fall into each of the definitions of the Classes.

Members of the Classes can be easily identified through Defendants' records.

33.    **Commonality and Predominance**: There are many questions of law

and fact common to the claims of Plaintiff and the Classes, and those questions

predominate over any questions that may affect individual members of the Classes.

Common questions for the Classes include, but are not necessarily limited to, the

following:

**The Do Not Call Class**:

(a)  Whether Defendants' conduct violated the TCPA;

(b)  Whether Defendants and/or their agents systematically made telephone calls to consumers who did not previously provide Defendants or their agents with prior express consent to receive such calls;

(c)  Whether Defendants and/or their agents made more than one telephone call within a 12-month period to consumers whose telephone numbers were registered with the National Do Not Call Registry (for at least thirty days, at the time of each call); and

(d)  Whether Plaintiff and members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**Robocall Class**:

(a)  Whether Defendants' conduct violated the TCPA;

(b)  Whether Defendants and/or their agents systematically made telephone calls to consumers who did not previously provide Defendants or their agents with prior express consent to receive such telephone calls;

(c)     Whether Defendants' telephone calls featured an artificial or

prerecorded voice; and

(d)     Whether Plaintiff and the members of the Robocall Class are

entitled to treble damages based on the willfulness of

Defendants' conduct.

**Autodial Class**:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants and/or their agents systematically made

telephone calls to consumers who did not previously provide

Defendants or their agents with prior express consent to receive

such telephone calls;

(c)     Whether Defendants' calls were made to consumers' cellular

telephones utilizing an automatic telephone dialing system; and

(d)     Whether Plaintiff and the members of the Autodial Class are

entitled to treble damages based on the willfulness of

Defendants' conduct.

34.     **Typicality**: Plaintiff's claims are typical of the claims of the other

members of the Classes. Plaintiff and the Classes sustained damages as a result of

Defendants' uniform wrongful conduct toward Plaintiff and the Classes.

35.     **Adequate Representation**: Plaintiff will fairly and adequately

14

represent and protect the interests of the Classes, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

36.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of all the Classes and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendants' practices challenged herein apply to and affect each of the members of each of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to each of the Classes as a whole, not on facts or law applicable only to Plaintiff.

37.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of each of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants'

actions. Thus, it would be virtually impossible for the individual members of each of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Class)**

38.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

39.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

40.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—

provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

41.     47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

42.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf

of that person or entity. The procedures instituted must meet the following

minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product

being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

43.     Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Class within a 12-month period without having prior express written consent to place such calls. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. Plaintiff and members of the Do Not Call Class never provided any form of consent to receive telephone calls from Defendants or their agents and/or neither Defendants nor their agents have any record of consent to place telemarketing calls to them.

44.     Defendants violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls.

45.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the members of the Do Not Call Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. §

64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the members of the Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

46.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Robocall Class)**

47.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.     Defendants and/or their agents made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Robocall Class—without their prior express consent—in an effort to sell energy services.

49.     These calls featured artificial or prerecorded voices.

50.     By having unsolicited telephone calls made to Plaintiff's and the Robocall Class members' telephones without prior express written consent, and by

having artificial or prerecorded voices used when placing such calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

51.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Robocall Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

52.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

**THIRD CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Autodial Class)**

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     Defendants and/or their agents made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodial Class—without their prior express consent—in an effort to sell energy services.

55.    Defendants had these telephone calls placed using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

56.    Defendants had the telephone calls placed using equipment that made the telephone calls to Plaintiff and other members of the Autodial Class simultaneously and without human intervention.

57.    By having unsolicited telephone calls made to Plaintiff's and the Autodial Class members' cellular telephones without prior express consent, and by having equipment used that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

58.    As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodial Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

59.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of

22

statutory damages recoverable by Plaintiff and the other members of the Autodial Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Dobkin, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying each of the Classes as defined above, appointing Plaintiff Michael Dobkin as representative of each of the Classes, and appointing his counsel as Class Counsel;

B.      An order declaring that Defendants' actions, as set out above, willfully violate 47 U.S.C. § 227;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.      An award of actual and statutory damages;

E.      An award of reasonable attorneys' fees and costs; and

F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**MICHAEL DOBKIN**, individually and on behalf of all others similarly situated,

Dated: September 2, 2015            By:/s/ Stefan Coleman
                                    One of Plaintiff's Attorneys

Stefan Coleman (SC6365)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Rafey S. Balabanian (*Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (*Pro Hac Vice*)
ascharg@edelson.com
Alicia E. Hwang (*Pro Hac Vice*)
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## <u>CERTIFICATE OF SERVICE</u>

I, Stefan L. Coleman, an attorney, hereby certify that on September 2, 2015, I served the above and foregoing ***First Amended Class Action Complaint***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 2nd day of September 2015.

<u>/s/ Stefan L. Coleman</u>
Stefan L. Coleman