# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY, TRENTON DIVISION

| | |
|---|---|
| MICHAEL DOBKIN, individually and on behalf of all others similarly situated, | Case No. 3.15-cv-05089 |
| *Plaintiff*, | Hon. Brian R. Martinotti, USDJ |
| v. | Hon. Lois H. Goodman, USMJ |
| NRG RESIDENTIAL SOLAR SOLUTIONS LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

III. TERMS OF THE SETTLEMENT ................................................ 7

    A.   Class Definition ........................................................ 7

    B.   Monetary Relief ........................................................ 7

    C.   Compensation for Class Representative ............................... 8

    D.   Payment of Attorneys' Fees and Expenses ........................... 8

    E.   Payment of Notice and Administrative Expenses ..................... 8

    F.   Release ................................................................ 9

IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED ........................... 9

    A.   The Numerosity Requirement Is Satisfied And The Class Is Ascertainable ........................................................ 11

    B.   There Are Common Questions Of Law And Fact ..................... 12

    C.   Dobkin's Claims Are Typical Of The Settlement Class's Claims ................................................................ 15

    D.   Dobkin And His Counsel Have And Will Continue To Adequately Represent The Settlement Class ......................... 17

    E.   The Proposed Settlement Class Also Satisfies Rule 23(b)(3) ........................................................ 19

        1.   *Common Questions of Law and Fact Predominate* ............... 19

        2.   *The Class Action Mechanism is Superior to Other Methods for the Adjudication of this Matter* ............... 21

V.      PLAINTIFF'S COUNSEL SHOULD BE
        APPOINTED CLASS COUNSEL FOR THE
        PROPOSED SETTLEMENT CLASS .......................................... 22

VI.     THE PROPOSED SETTLEMENT WARRANTS
        PRELIMINARY APPROVAL ...................................................... 25

        A.      The Proposed Settlement Is Entitled To A
                Presumption Of Fairness ................................................ 27

        B.      The Proposed Settlement Falls Within The
                Range Of Possible Approval .......................................... 29

                1.      The Proposed Settlement Provides Meaningful
                        Recovery to the Settlement Class ........................ 29

                2.      The Complexity, Expense, and Length of Continued
                        Litigation—Coupled with the Risks Associated
                        with Such Protracted Litigation—Favor Approval
                        of the Settlement .................................................. 30

                3.      The Parties Had Sufficient Information to Assess the
                        Proposed Settlement ............................................ 31

VII.    THE PROPOSED NOTICE PLAN SHOULD
        BE APPROVED ......................................................................... 33

VIII.   CONCLUSION .......................................................................... 35

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 9, 10, 19, 22

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ...................................................................... 5

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................... 33

*Mims v. Arrow Fin. Svcs's, LLC*,
    132 S. Ct. 740 (2012) ...................................................................... 4

*Spokeo v. Robins*,
    136 U.S. 1540 (2016) ...................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................... 12

**United States Circuit Court of Appeals Cases**

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................................ 13, 16

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ................................................................ 16, 17

*Bogosian v. Gulf Oil Corp.*,
    561 F2d 434 (3d Cir. 1977) ................................................................ 17, 18

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) ................................................................ 18

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985) ................................................................ 16, 20

*Gager v. Dell Fin. Serv.*,
    727 F.3d 265 (3d Cir. 2013) ................................................................ 4

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011) ........................................................ 19

*Georgine v. Amchem Prods., Inc.*,
   83 F.3d 610 (3d Cir. 1996) ........................................................ 21

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013) ........................................................ 12

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
   980 F.2d 912 (3d Cir. 1992) ........................................................ 16

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ........................................................ 10, 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................ 27, 28

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ........................................................ 9, 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................................*passim*

*In re Sch. Asbestos Litig.*,
   789 F.2d 996 (3d Cir. 1986) ........................................................ 13

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................ 13, 25

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) ........................................................ 21

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ........................................................ 12

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) ........................................................ 19, 20

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ........................................................ 13, 17

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013) ................................................................... 11, 13

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ........................................................... 12, 13, 16

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273, (3d Cir. 2011) ....................................................... 9, 10, 11, 13

*Thomas v. Taco Bell Corp.*,
582 F. App'x 678 (9th Cir. 2014) ................................................................. 31

**United States District Court Cases**

*Arthur v. Sallie Mae, Inc.*,
No. 2:10-cv-00198 (W.D. Wash. Sept. 17, 2012) ........................................ 30

*Agostino v. Quest Diagnostics Inc.*,
256 F.R.D. 437 (D.N.J. 2009) ...................................................................... 12

*Banda v. Corzine*,
No. CIV. 07-4508 (WJM), 2007 WL 3243917 (D.N.J. 1, 2007). ............... 11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ....................................................... 14, 17, 24

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
296 F.R.D. 299 (D.N.J. 2013) ........................................................ 15, 16, 21

*Elias v. Ungar's Food Products, Inc.*,
252 F.R.D. 233 (D.N.J. 2008) ...................................................................... 20

*Erheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ........................................................................ 25

*Florence v. Bd. of Chosen Freeholders*,
No. 05-3619, 2008 WL 800970 (D.N.J. Mar. 20, 2008) ............................. 11

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016) ............................................................ 14, 15

*Harlan v. Transworld Sys., Inc.*,

302 F.R.D. 319 (E.D. Pa. 2014) .................................................. 29

*Harris v. comScore, Inc.*,
   292 F.R.D. 579 (N.D. Ill. 2013) ........................................ 24

*Hashw v. Dept. Stores Nat'l Bank*,
   182 F. Supp. 3d 935 (D. Minn. 2016) ................................ 30

*Henderson v. United Student Aid Funds, Inc.*,
   No. 13CV1845 JLS (BLM), 2017 WL 766548
   (S.D. Cal. Feb. 28, 2017) ................................................. 31

*Hinman v. M & M Rental Ctr., Inc.*,
   545 F. Supp. 2d 802 (N.D. Ill. 2008)................................. 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ....................................... 27

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015)...................................... 30, 31

*In re Ins. Brokerage Antitrust Litig.*,
   No. CIV 04-5184 FSH, 2007 WL 542227 (D.N.J. Feb. 16, 2007).............. 20

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
   No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) ............................ 30

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997)............................................ 26

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014).............................. 26, 27, 28

*In re Netflix Privacy Litig.*,
   No. 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) .......................... 24

*Ira Holtzman, C.P.A. v. Turza*,
   No. 11-3188, --- F.3d ---, 2013 WL 4506176
   (7th Cir. Aug. 26, 2013) ................................................. 15

*Kazemi v. Payless Shoesource, Inc.*,

No. 3:09-cv-05142 (N.D. Cal. Apr. 2, 2012) ......................................... 29, 30

*Klingensmith v. Max & Erma's Rests, Inc.*,
    No. 07-cv-0318, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) ............. 28, 32

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ........................................................... 15, 30

*Kristensen v. Credit Payment Servs. Inc.*,
    No. 2:12-CV-00528, 2015 WL 4477425 (D. Nev. July 20, 2015) .............. 31

*Lozano v. Twentieth Century Fox Film Corp.*,
    No. 09-cv-06344 (N.D. Ill. Nov. 17, 2010) ............................................. 24, 25

*Mazon v. Wells Fargo Bank, N.A.*,
    No. 10-cv-700, 2011 WL 6257149 (D.N.J. Dec. 14, 2011) ........................ 26

*Pimental, et al. v. Google Inc., et al.*,
    No. 11-cv-2585 (N.D. Cal.) ....................................................................... 25

*Rojas v. Career Educ. Corp.*,
    No. 10-cv-5260 (N.D. Ill. June 26, 2012) ................................................. 24

*Rowe v. E.I. Dupont De Nemours & Co.*,
    262 F.R.D. 451 (D.N.J. 2009) ................................................................... 12

*Satterfield v. Simon & Schuster, Inc., et al.*,
    No. 06-cv-2893 (N.D. Cal. 2010) .............................................................. 25

*Skeen v. BMW of N. Am., LLC*,
    No. 2:13-CV-1531-WHW-CLW, 2016 WL 70817
    (D.N.J. Jan. 6, 2016) ....................................................................... 25, 26, 27

*Szczcubelek v. Cendant Mortg. Corp.*,
    215 F.R.D. 107 (D.N.J. 2003) ................................................................... 16

*Wallace v. Powell*,
    No. 09-cv-0291, 2013 WL 2042369 (M.D. Pa. May 14, 2013) .................. 18

*Weissman v. Philip C. Gutworth, P.A.*,
    No. 2:14-CV-00666 WHW, 2015 WL 333465 (D.N.J. Jan. 23, 2015) ........ 27

**Statutory Provisions**

28 U.S.C. § 1715 ................................................................................ 34

47 U.S.C. § 227 .......................................................................... *passim*

Fed. R. Civ. P. 23 ....................................................................... *passim*

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions*,
    § 11.41 90 (4th ed. 2002) .............................................................. 28

*In the Matter of the Joint Petition Filed by Dish Network, LLC et al. for
    Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*,
    28 FCC Rcd. 6574 (F.C.C. May 9, 2013) ...................................... 5

*Manual for Complex Litigation*,
    (4th ed. 2004) ........................................................................... 9, 26

*Manual for Complex Litigation*,
    (3d ed. 1995) ...................................................................... 26, 27, 28

U.S. Chamber Institute for Legal Reform, *The New Lawsuit Ecosystem: Trends*,
    (October 2013), available at http://www.instituteforlegalreform.com/
    uploads/sites/1/The_New_Lawsuit_Ecosystem_pages_web.pdf. ......... 23, 24

## I.  INTRODUCTION

Plaintiff Michael Dobkin ("Dobkin" or "Plaintiff") respectfully moves the court to enter preliminary approval of the proposed class action settlement reached with Defendant NRG Residential Solar Solutions LLC ("NRG Residential" or "Defendant") and its parent NRG Energy, Inc. ("NRG Energy," and collectively, with NRG Residential, "NRG"). Not only is the settlement—which resolves claims that NRG Residential violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 through a telemarketing campaign promoting the sale and installation of its solar panels—truly an exceptional result for the proposed Settlement Class,[1] but it was reached only after active litigation and the continued assistance of Magistrate Judge Goodman.

With respect to the substantive relief under the proposed Settlement, and to its credit, NRG has agreed to establish a non-reversionary common fund of $7,000,000 (the "Settlement Fund") from which all claims and costs of the settlement will be paid. From this fund, claiming class members are anticipated to receive around $150-$250 each. In addition, NRG Residential is no longer operating a business pursuant to which it purchases leads from a third-party lead generator as a result of that lead generator's telephone calls to such persons. Such a result compares favorably to other TCPA class action settlements—an area not

---

[1]   Except as otherwise indicated, all defined terms used herein shall have the meanings ascribed to them in the proposed Class Action Settlement Agreement.

lacking in comparables—where class members typically receive less than $50 in a case like this.

Arriving at this resolution wasn't through a quick or easy path. Rather, it was the result of hard fought litigation and extensive negotiations, including a failed mediation with Prof. Eric Green and months of negotiations by telephone presided over by Magistrate Judge Lois H. Goodman, with an ultimate deal being reached at an in-person settlement conference. And, even though at the beginning of the settlement conference it seemed that reaching an agreement would be unlikely, Magistrate Goodman was able to bridge a wide gap in the parties' settlement positions, ultimately making a mediator's proposal, which both sides accepted. As set forth herein, the Settlement is fair, reasonable and adequate and well within the range of approval.

For the reasons described below, Plaintiff Michael Dobkin respectfully requests that the Court enter an order (1) preliminarily certifying the proposed Settlement Class, (2) naming Plaintiff as Class Representative, (3) appointing Rafey S. Balabanian and Eve-Lynn J. Rapp of Edelson PC as Class Counsel, (4) granting preliminary approval of the Settlement, (5) approving the proposed Notice Plan, and (6) scheduling a Final Fairness Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Dobkin initiated this case on July 1, 2015, against NRG

Energy, Inc., and its wholly-owned subsidiary, Defendant NRG Residential

Solutions LLC.[2] (Dkt. 1.) Plaintiff alleged that NRG Residential, a company that

sells and installs solar panels for residential use, sought to increase sales revenue

by placing harassing telemarking calls to consumers throughout the country

without permission or consent, including to consumers that have registered their

phone numbers with the National Do Not Call Registry. (Dkt. 28 ¶ 1.) During those

calls, lead generators allegedly would misrepresent that it was working with

fictional or unrelated nonprofit and governmental entities, such as the "Department

of Solar Energy" and the "Clean Planet Program," in deliberate attempts to mislead

consumers. (*Id.* ¶ 2.)

Plaintiff alleged that, rather than using live representatives, lead generators'

calls often featured artificial or prerecorded voices—commonly known as

"robocalls"—and the company disabled or obscured certain menu prompts to make

it more difficult for consumers to opt-out of receiving more calls in the future. (*Id.*)

Recipients of the calls regularly complained online about receiving the calls and

---

[2]      After defendants filed a Motion to Dismiss, Plaintiff filed his First Amended
Complaint. (*See* Dkt. 11 ("Motion to Dismiss"), Dkt. 16 ("First Amended
Compl.")). On September 25, 2015, Plaintiff dismissed his claims in this matter
against Defendant NRG Energy, Inc. without prejudice, and filed a Second
Amended Complaint against NRG Residential Solar Solutions LLC. (*See* Dkt. 25
("Notice of Voluntary Dismissal"), Dkt. 28 ("Second Amended Compl.")).

having to deal with the ineffective opt-out mechanisms. (*Id.* ¶¶ 15, 16.) Plaintiff alleged that NRG Residential knowingly placed telemarketing calls, or had the calls placed on its behalf, without the prior express written consent of the call recipients, and knowingly continued to have such calls placed even after receiving explicit requests to cease. (*Id.* ¶ 17.)

Plaintiff claimed that, by placing these telemarking calls, NRG Residential engaged in the exact conduct that the TCPA was enacted to stop. (Dkt. 28, ¶¶ 3, 4, 17.) Congress passed the TCPA in response to "voluminous consumer complaints," and to restrict telemarketing calls and prohibit "intrusive nuisance calls" it determined were an invasion of privacy. *Mims v. Arrow Fin. Svcs's, LLC*, 132 S. Ct. 740, 744 (2012); *see also Gager v. Dell Fin. Serv.*, 727 F.3d 265, 268 (3d Cir. 2013) (same). As such, the TCPA is a means to combat the growing threat to privacy posed by automated telemarketing, such as those at issue in this case, and makes it unlawful, subject to certain exceptions, for any person within the United States to:

> (A)  make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . or
>
> (B)  initiate any telephone call to any residential telephone line using an artificial or prerecorded voice . . . without the prior express consent of the called party . . .

47 U.S.C. § 227(b)(1)(A)(iii), 47 U.S.C. § 227(b)(1)(B).

The FCC has likewise made clear that liability under the TCPA will attach to persons or entities who have a high degree of involvement in the transmissions even if they did not place the calls, and that an entity can be liable under the TCPA through federal common law agency principles. *See In the Matter of the Joint Petition Filed by Dish Network, LLC et al. for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, Declaratory Ruling, 28 FCC Rcd. 6574, 6583-84, 6587, n. 107 (F.C.C. May 9, 2013) (the "2013 FCC Order"); *cf. Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (finding "no cause to question" the FCC's ruling "that under federal common-law principles of agency, there is vicarious liability for TCPA violations").

In response to the complaint, NRG moved to dismiss. (Dkt. 11.) Plaintiff then filed an amended complaint, which NRG answered. (Dkts. 16, 26.) After the pleadings were settled, the Court granted Defendant's motion to stay while the Parties waited for several months on the Supreme Court's decisions on Article III standing in *Spokeo v. Robins*, 136 U.S. 1540 (2016) and mootness in *Campbell-Ewald Co. v. Gomez*, No. 14-0857 (U.S.) (Dkt. 32.) Once those cases were decided and it was clear this case would proceed, the stay was lifted, the Parties filed a Joint Proposed Discovery Plan, exchanged initial disclosures, and served written discovery on each other and certain third parties. (Dkts. 42, 43; Ex. B, Declaration of Rafey S. Balabanian [cited as Balabanian Decl.], ¶ 4.) Plaintiff also took the

deposition of a third party lead generator to obtain the facts surrounding their calling practices, as well as their relationship with NRG Residential. (Ex. B, Balabanian Decl. ¶ 4.)

Discovery revealed that NRG Residential purchased leads from third-party lead generators as a result of lead generators' telephone calls to consumers. (*Id*. ¶ 5.) NRG would then be provided with the contact information of those consumers whom they hoped to sell their solar energy products. (*Id*.) In the end, the Parties obtained extensive discovery in the case, and it permitted both sides to accurately evaluate the claims and defenses. (*Id*.) Notwithstanding, the Parties held very different views on the strengths and weaknesses of the case; Plaintiff remained confident that he would ultimately prevail in litigation, while Defendant denied that the calls at issue violate the TCPA or any other statute or law or that it is liable for calls made by third parties. (*Id*.)

At the same time they were actively litigating the case, the Parties engaged in settlement discussions for the better part of a year and attempted to resolve the suit through a private mediation on September 27, 2016, with Professor Eric Green of Resolutions LLC. (*Id*. ¶ 6.) That mediation was not successful in bringing about a settlement. (*Id*.) The parties then returned to discovery, but in March 2017, the Parties decided to revisit settlement talks, this time with the assistance of Magistrate Goodman. (*Id*. ¶¶ 6-7.) After several exchanges of settlement

6

communications and telephonic conferences, the Parties attended an in-person settlement conference with Magistrate Goodman on July 12, 2017. (*Id*. ¶ 7.) Despite the gap in parties' settlement positions being wide, Magistrate Goodman worked tirelessly to bring the parties closer together on the material terms of a class settlement, and then eventually made a mediator's proposal, which both parties accepted. (*Id*.) After additional negotiations over specifics, the parties executed the formal Settlement Agreement and Dobkin now seeks preliminary approval. (*Id*.)

## III.   TERMS OF THE SETTLEMENT

A copy of the Settlement Agreement is attached hereto as Exhibit A. The key terms of the Agreement are briefly summarized below:

**A.     Class Definition:** The Settlement Class includes all persons with respect to whom NRG Residential was offered a lead from a third-party lead generator as a result of the lead generator's telephone call to such person. (Settlement Agreement § 1.28.) Based on discovery and investigation to date, there are approximately 317,000 Persons within the Settlement Class. (*Id.*)

**B.     Monetary Relief:** NRG has agreed to create a non-reversionary $7 million Settlement Fund. (*Id.* § 1.30.) Each Settlement Class member that submits a valid claim form will be entitled to receive a *pro rata* amount of the portion of the Settlement Fund that remains after payment of all Settlement Administration

Expenses, any incentive awards to the Class Representative, any Fee Award to Class Counsel, and any applicable taxes. (*Id.* § 2.1(b).)

  **C. Compensation for Class Representative:** NRG has agreed that Dobkin is entitled to payment of an incentive award from the Settlement Fund, and that Class Counsel may petition for such an award from the Court. (*Id.* § 9.3.)

  **D. Payment of Attorneys' Fees and Expenses:** NRG has agreed to pay to Class Counsel reasonable attorneys' fees and reimbursable expenses in an amount approved by the Court, to be paid from the Settlement Fund. (*Id.* §§ 9.1, 9.2.) Class Counsel will move the court for an award of attorneys' fees and reimbursable expenses and costs, the amount of which will be determined by the court and paid from the Settlement Fund. Without having discussed the issue of attorneys' fees at any point during the Parties' negotiations, NRG has nonetheless agreed not to object to any request for reasonable attorneys' fees and reimbursable expenses and costs that is no more than one-third of the amount of the Settlement Fund. (*Id.*)

  **E. Payment of Notice and Administrative Expenses:** The Parties have agreed that all notice and administration expenses will be paid out of the Settlement Fund. (*Id.* § 1.26.) The Parties have selected professional administrator KCC Class Action Services, LLC, as the Settlement Administrator in this case. (*Id.* § 1.27.)

**F.**    **Release:** In exchange for the monetary relief described above, NRG Residential (along with NRG Energy, any lead generator that called a member of the Settlement Class, and the other "Released Parties" as defined in the Settlement Agreement) will be released, relinquished and forever discharged from any and all claims relating in any way to calls that the Released Parties may have made to members of the Settlement Class that violated the TCPA or state law. (*Id.* § 3.)

## IV.    THE PROPOSED CLASS SHOULD BE CERTIFIED.

Before granting preliminary approval of a proposed class action Settlement, the Court must determine whether certification of the proposed Settlement Class is appropriate. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* § 21.632 (4th ed. 2004). Because Plaintiff is moving for both certification of the Settlement Class and preliminary approval of the Settlement, this Court "should make a preliminary determination that [Plaintiff's] proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Manual for Complex Litigation* § 21.632; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010).

Rule 23(a) requires that (i) the proposed settlement class be so numerous that joinder of all individual settlement class members is impracticable

(numerosity); (ii) there are questions of law or fact common to the settlement class members (commonality); (iii) the claims of the plaintiff are typical of those of the settlement class (typicality); and (iv) plaintiff will fairly and adequately protect the interests of the settlement class (adequacy). *Sullivan*, 667 F.3d at 296; *see also Amchem*, 521 U.S. at 613; Fed. R. Civ. P. 23(a). "Upon finding each of these prerequisites satisfied, a district court must then determine that the proposed class fits within one of the categories of class actions enumerated in Rule 23(b)." *Sullivan*, 667 F.3d at 296.

Where, as here, certification is sought under Rule 23(b)(3), the proponent of class certification must show (i) that common questions of law or fact predominate over questions affecting only individual settlement class members and (ii) that a class action is superior to other available methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3); *Sullivan*, 667 F.3d at 296. "These twin requirements are commonly referred to as predominance and superiority." *Sullivan*, 667 F.3d at 296.

In this Circuit, "[courts hold] the parties to their bargain, [showing…] 'strong judicial policy in favor of class action settlement.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013) (citation omitted). Because Dobkin is seeking certification of a class for settlement purposes, the "[C]ourt need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re Pet Food Prods.*, 629 F.3d at 341;

10

*Sullivan*, 667 F.3d at 303-04 (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005)) ("[T]he proposed settlement…obviates the difficulties inherent in proving the elements of varied claims at trial.") (quotation omitted).

Here, Dobkin respectfully requests that the following Settlement Class be certified for settlement purposes: all Persons with respect to whom NRG Residential was offered a lead from a third-party lead generator as a result of the lead generator's telephone call to such person. (Ex. A, Settlement Agreement § 1.28.)

### A. The Numerosity Requirement Is Satisfied And The Class Is Ascertainable.

The first requirement of Rule 23(a)—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is "'[n]o single magic number [that] satisf[ies] the numerosity requirement.'" *Florence v. Bd. of Chosen Freeholders*, No. CIV. A. 05-3619, 2008 WL 800970, at *6 (D.N.J. Mar. 20, 2008) (citing *Banda v. Corzine*, No. CIV. 07-4508 (WJM), 2007 WL 3243917, at *16 (D.N.J. 1, 2007). "However, the Third Circuit has opined that while there is technically no minimum class size; 'generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). Here, based on discovery and investigation, there are approximately 317,000 individuals in the

Settlement Class. (Ex. A, Settlement Agreement § 1.28; Ex. B, Balabanian Decl. ¶ 5.) Consequently, the numerosity requirement of Rule 23(a)(1) is clearly satisfied.

Though not an express requirement under Rule 23, the proposed Settlement Class is also sufficiently ascertainable inasmuch as (i) the Class is defined with reference to objective criteria (*i.e.*, Persons with respect to whom NRG Residential was offered a lead from a third-party lead generator as a result of the lead generator's telephone call to such person), and (ii) "there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition" (*i.e.*, Defendant's records). *See Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)); *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 478 (D.N.J. 2009)).

### B.  There Are Common Questions Of Law And Fact.

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires a "common contention . . . of such a nature that it is capable of class-wide resolution [meaning] . . .that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "'The commonality

requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Stewart*, 275 F.3d at 227 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). The "bar is not a high one…the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is 'on whether the defendant's conduct was common as to all of the class members.'" *Rodriguez*, 726 F.3d at 382 (quoting *Sullivan*, 667 F.3d at 299); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Baby Neal*, 43 F.3d at 57 (considering whether the defendant "engag[ed] in a common course of conduct toward" the settlement class).

Indeed, the Third Circuit has "set a low threshold" for satisfying commonality requirements. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citing *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1001 (3d Cir. 1986) (noting that the "threshold of commonality is not high")). Generally, "[t]he commonality standard will be satisfied if the named plaintiff[] share[s] at least one question of fact or law with the grievances of the prospective class." *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998). In the TCPA context, a pattern of conduct that may give rise to common questions is the placement of calls using an artificial or prerecorded voice. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (finding common questions where all class members

"received the same calls . . . using the same artificial or prerecorded voice technology").

The proposed Settlement Class here readily satisfies the commonality requirement of Rule 23(a). (Ex. B, Balabanian Decl. ¶ 8.) Dobkin asserts (and NRG denies) that, through a common course of conduct, NRG Residential's alleged agents made thousands of unsolicited telemarketing calls to consumers nationwide in violation of the TCPA, causing Plaintiff and the other Settlement Class members to suffer the same type of harm (arising from the aggravation and invasion of privacy associated with the receipt of such calls). (*Id*.) The claims of Dobkin and the Settlement Class are thus based upon the same disputed contentions: that NRG Residential violated the TCPA by having telemarketing calls made to their telephone numbers, despite the fact that the called parties did not authorize the calls (*Id*.) On similar facts, and certainly in the settlement context, courts have found commonality readily satisfied. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (common question of consent in suit alleging that defendant sent automated debt-collection calls and texts); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 492-93 (N.D. Ill. 2015); (common question of "whether, as a matter of law, providing a cellular telephone number for verification purposes constitutes prior express consent to receive prescription refill reminder calls"); *Hinman v. M & M Rental Ctr., Inc*., 545 F.

Supp. 2d 802, 807 (N.D. Ill. 2008) (common question of consent where "[defendant's] fax broadcasts were transmitted *en masse* based on the 'leads' list compiled several years earlier"); *see also Ira Holtzman, C.P.A. v. Turza*, No. 11-3188,--- F.3d ---, 2013 WL 4506176, at *1 (7th Cir. Aug. 26, 2013) ("[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given [communication] is an advertisement, are common to all recipients").

Defendant's alleged uniform pattern of conduct has given rise to several common questions of both law and fact, including whether NRG Residential's alleged agents made telephone calls to consumers without their prior express consent, whether NRG Residential can be held vicariously liable for the calls placed by its alleged agents, whether the alleged TCPA violations were willful. (Ex. B, Balabanian Decl. ¶ 8.) Accordingly, the commonality requirement is met. *See City Select Auto Sales, Inc. v. David Randall Assocs, Inc.*, 296 F.R.D. 299, 314 (D.N.J. 2013) (finding "common questions of law and fact because all class members have TCPA claims based on Defendant's mass advertising campaign.")

## C. Dobkin's Claims Are Typical Of The Settlement Class's Claims.

The third Rule 23(a) requirement—typicality—is satisfied where "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to

commonality and is satisfied if the class representative's claims "arise from the same events, practice, or conduct, and are based on the same legal theory as those of other class members." *Szczcubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 118 (D.N.J. 2003) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)). To evaluate typicality, courts must determine "whether the named plaintiffs' claims are typical, in common-sense terms…. thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal*, 43 F.3d at 55.

"'Factual differences will not render a claim atypical if the claim arises from the [] same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory.'" *Stewart*, 275 F.3d at 227-28 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992)); *see also Baby Neal*, 43 F.3d at 58 ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."). Typicality does not require that claims be completely identical, but rather, examines "whether the class representative's claims have the same essential characteristics as those of the putative class," and factual differences do not defeat typicality where the claims arise from a similar course of conduct and share the same legal theory. *Szczubelek*, 215 F.R.D. at 118. Like the commonality requirement, courts in the Third Circuit have set a low

threshold for satisfying the typicality requirement. *Newton*, 259 F.3d at 183 (citing

*Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).

In this case, Dobkin claims that he and the Settlement Class were both

subjected to NRG Residential's alleged common course of conduct. (Dkt. 28, ¶¶

10–17; Ex. B, Balabanian Decl. ¶ 8.) That is, NRG Residential's alleged agents

made telephone calls to Dobkin and the Settlement Class without their prior

express consent. (*Id*.); *see also Birchmeier*, 302 F.R.D. at 251 (finding, in the

TCPA context, that "because the named plaintiffs received the same type of call as

the other class members, their claims are typical of those of the class.").

Further, as a result of NRG Residential's alleged conduct, Plaintiff claims

that he and the Settlement Class suffered substantially the same harm in the form

of the aggravation and invasion of privacy that necessarily accompanies the receipt

of such calls, thus entitling them to identical statutory damages under the TCPA.

(Dkt. 28, ¶¶ 3–5; Ex. B, Balabanian Decl. ¶ 8.) As such, by pursuing his own

claim, Plaintiff will necessarily advance the interests of the proposed Class in

satisfaction of Rule 23(a)(3)'s typicality requirement.

### D. Dobkin And His Counsel Have And Will Continue To Adequately Represent The Settlement Class.

The final Rule 23(a) requirement—adequacy—requires that Dobkin and his

counsel "fairly and adequately represent the interests of the class." *See* Fed. R. Civ.

P. 23(a)(4); *In re Warafrin*, 212 F.R.D. at 250. This means that "both the named

Plaintiff and their attorneys must show that they 'will competently, responsibly and vigorously prosecute the suit.'" *Szczubelek*, 215 F.R.D. at 119 (citing *Bogosian v. Gulf Oil Corp.*, 561 F2d 434 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978)). Thus, adequacy of representation requires two elements: (1) The class representative must not have interests antagonistic to those of the class, and (2) class counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *Id.*; *See also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (stating that "[t]he adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs"); *See also Wallace v. Powell*, No. 09-cv-0291, 2013 WL 2042369, at *7 (M.D. Pa. May 14, 2013) (discussing two-step analysis of adequacy requirement).

Here, Dobkin has the same interests as the Settlement Class. He alleges that he received unauthorized phone calls from NRG Residential's alleged agents as a result of a uniform course of unlawful conduct. (Dkt. 28, ¶¶ 10–17.) Therefore, like the other Persons within the Settlement Class, Dobkin's interests lie in ensuring that he and the Settlement Class recover the statutory damages to which they are entitled. (*Id.* at ¶¶ 10–17, 3–5.) Plaintiff has no interests antagonistic to those of the Settlement Class. (*Id.*) Similarly, as further discussed below in regards to why they should be appointed Class Counsel, Mr. Balabanian and Ms. Rapp of Edelson PC

have extensive experience in class actions of similar size, scope, and complexity to the instant action. (Ex. B, Balabanian Decl. ¶ 13; see also Firm Resume of Edelson PC, attached as Ex. 1 to the Balabanian Decl.) They have and will continue to use their experience for the benefit of the Settlement Class. (*Id.*) Thus, the adequacy factor of Rule 23(a) is satisfied.

### E.  The Proposed Settlement Class Also Satisfies Rule 23(b)(3).

Because Dobkin seeks certification of the Settlement Class under Rule 23(b)(3), he must demonstrate that the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *In re Prudential Ins. Co.*, 148 F.3d at 313. This case easily meets both of these requirements.

### 1.  *Common Questions of Law and Fact Predominate.*

Rule 23(b)(3)'s predominance requirement "asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370 (3d Cir. 2015); *see also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 270 (3d Cir. 2011) (stating that the predominance requirements looks to "whether proposed classes are sufficiently cohesive to warrant adjudication by representation") (citing *Amchem Prods., Inc*,

521 U.S. at 623). While the "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate," *In re Ins. Brokerage Antitrust Litig.*, No. CIV 04-5184 FSH, 2007 WL 542227, at *15 (D.N.J. Feb. 16, 2007) *aff'd*, 579 F.3d 241 (3d Cir. 2009) (quoting *Eisenberg*, 766 F.2d at 786), the predominance requirement demands that the issues in the class action be applicable to the class as a whole and subject to generalized proof. *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 246 (D.N.J. 2008); *see also Neale,* 794 F.3d 353 at 371 (stating that "[i]f issues common to the class overwhelm individual issues, predominance should be satisfied" under Rule 23(b)(3)).

Here, Dobkin's claims and those of the Settlement Class all arise from the alleged standardized conduct of NRG Residential's alleged agents placing telephone calls to Dobkin and the Settlement Class without their prior express consent. (Dkt. 28, ¶¶ 10-25.) Thus, common questions predominate over any issues affecting only individual members of the Settlement Class. Moreover, the evidence necessary to prove Plaintiff's and Settlement Class members' claims—including evidence regarding the prerecorded nature of the calls, the equipment used to place the calls, the phone numbers that were called, how Defendant or its alleged agents obtained those phone numbers, and the nature of the alleged agency relationship with the third-party lead generators—will come from within NRG Residential or

its alleged agent's own records, rather than from individual members of the Settlement Class. (Ex. B, Balabanian Decl. ¶ 9.) Thus, the claim at issue in this case—Defendant's alleged violation of the TCPA—presents numerous common and predominant issues for the Class and is subject to generalized proofs. *See City Select*, 296 F.R.D. at 314 (finding that "[b]ecause Defendant engaged in a mass [advertising] campaign, common questions predominate" in TCPA class action).

As such, the predominance requirement is satisfied.

### 2.  The Class Action Mechanism is Superior to Other Methods for the Adjudication of this Matter.

Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *In re Prudential Ins. Co.*, 148 F.3d at 314. The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 757 (3d Cir. 1974) (en banc), *cert. denied*, 419 U.S. 885 (1974)). The instant class action is superior to other available methods for litigating Plaintiff's and the Settlement Class's claims.

Absent class treatment in this case, each of the individual Settlement Class members would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which

21

would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. (Ex. B, Balabanian Decl. ¶ 10.) Such a result would be neither efficient nor fair to anyone, including Defendant.

Moreover, a class action is superior because it allows the Settlement Class Members to aggregate relatively modest individual claims worth just $500 per call in statutory damages (or, at most, $1,500 in the case of willful conduct). (*Id.*); *see also* 47 U.S.C. § 227(b)(3)(C); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") In comparison to the relief available, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. (Ex. B, Balabanian Decl. ¶ 10.)

Accordingly, the superiority requirement is also satisfied and the Settlement Class should be certified.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL FOR THE PROPOSED SETTLEMENT CLASS.

In addition to certifying the Settlement Class pursuant to Rule 23, this Court must also appoint class counsel who will fairly and adequately represent the interests of the Settlement Class. *See* Fed. R. Civ. P. 23(g)(1), (2), (4). In appointing class counsel, courts should focus on proposed class counsel's (1) work

in identifying or investigating potential claims; (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) the resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here, each of these factors weigh in favor of appointing Mr. Balabanian and Ms. Rapp of Edelson PC as counsel for the Settlement Class. Proposed Class Counsel have extensively investigated the calls at issue, identified the claims asserted against NRG Residential, prosecuted the Action, and ultimately negotiated a Settlement providing monetary relief for the proposed Settlement Class. (Ex. B, Balabanian Decl. ¶ 12.)

Edelson PC has been recognized as a pioneer in consumer technology class actions and has been named a "top national plaintiff's class action firm" in the areas of "technology, privacy, and telecommunications" by the U.S. Chamber Institute for Legal Reform.[3] (Ex. B, Balabanian Decl. ¶ 13, Ex. 1.) Proposed Class Counsel also have extensive experience handling TCPA-related class actions in particular. (*Id.*) What's more, Edelson PC is an unparalleled leader in large digital privacy cases involving complicated technological issues. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing Edelson PC lead

---

[3]     *See* U.S. Chamber Institute for Legal Reform, *The New Lawsuit Ecosystem: Trends, Targets and Players* at 16 (October 2013), available at http://www.instituteforlegalreform.com/ uploads/sites/1/The_New_Lawsuit_Ecosystem_pages_web.pdf.

counsel, noting that while two other firms had impressive resumes and litigation experience, Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class action renders them superior to represent the putative class"); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013) (appointing Edelson PC Class Counsel in case achieving adversarial certification in what is believed to be the largest ever privacy class action).

Specifically, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions across the country. *See Birchmeier*, 302 F.R.D. at 252 (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 at 3 (N.D. Ill. June 26, 2012) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel" and appointing them lead counsel in $20 million text spam settlement); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-06344, Dkt. 57 at 3 (N.D. Ill. Nov. 17, 2010) (serving as lead counsel in $16 million text spam settlement); *Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585, Dkt. 97 at 1 (N.D. Cal.) (appointing Class Counsel and "find[ing] that [Jay Edelson and Rafey Balabanian of Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel…."); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) (appointing attorneys at Edelson PC as co-lead counsel). To date, Edelson PC has committed substantial

human and financial resources to the prosecution of this case, and will continue to do so throughout its pendency. (Ex. B, Balabanian Decl. ¶ 14.)

In light of their extensive experience and commitment to the successful prosecution of the case, Dobkin respectfully requests that the Court appoint his counsel, Rafey S. Balabanian and Eve-Lynn J. Rapp of Edelson PC, as Class Counsel.

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

The decision to approve a settlement is committed to the sound discretion of the court, and the court must find that the settlement is "fundamentally fair, reasonable, and adequate." *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2016 WL 70817, at *4 (D.N.J. Jan. 6, 2016) (citing *Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); Fed. R. Civ. P. 23(e)).

Generally, courts review class settlements in two stages. *Id.*; *In re Warfarin*, 391 F.3d at 535. In the first step, "the [] parties submit the proposed settlement to the court, which must make [a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms by conducting] 'a preliminary fairness evaluation.'" *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("*In re NFL*"); *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Skeen*, 2016 WL 70817, at *4. If the court grants preliminary approval, which is non-binding, "the court then directs

that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement." *In re NFL*, 961 F. Supp. 2d at 714; *Skeen*, 2016 WL 70817, at *4 (citing Manual for Complex Litigation § 21.632); *see also* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5).

Preliminary approval should be granted, "'[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Mazon v. Wells Fargo Bank, N.A.*, No. 10-cv-700, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *Manual for Complex Litigation,* § 30.41 (3d ed. 1995)); *Skeen*, 2016 WL 70817, at *4 (stating that "[p]reliminary approval is granted unless the proposed settlement is obviously deficient") (citing *Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-CV-00666 WHW, 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015); *see also In re NFL*, 961 F. Supp. 2d at 714 (holding "[a]t the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered," and the court is only required to determine whether the proposed settlement appears to fall within the range of possible approval).

For the reasons described below, the Settlement is well within the range of possible approval and warrants preliminary approval.

### A. The Proposed Settlement Is Entitled To A Presumption Of Fairness.

An initial presumption of fairness may attach to a proposed settlement "when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[4] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Skeen*, 2016 WL 70817, at *4. "This examination is generally 'made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.'" *In re NFL*, 961 F. Supp. 2d at 714 (quotation omitted).

First, courts presume that class-wide settlements—like this one—are fair when negotiations occurred at arm's length and proposed counsel are experienced in similar litigation. *See In re Gen. Motors,* 55 F.3d at 785 (finding that arm's-length negotiations and experienced counsel warranted an initial presumption of

---

[4]    Because the Court has not yet granted preliminary approval and the Settlement Class has, therefore, not yet received notice of the Settlement, this fourth factor should not be weighed at this time. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010) (finding that the settlement class's reaction is not typically assessed at the preliminary approval stage before notice of the settlement has been disseminated).

fairness); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* §

11.41 90 (4th ed. 2002); *Manual for Complex Litigation* § 30.42 (3d ed. 1995). In

fact, as long as the investigation, litigation and settlement discussions "were

appropriately focused on the question critical to the merits of the case," settlements

are presumed fair even if "factual inquiry was neither exhaustive nor protracted."

*Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-cv-0318, 2007 WL 3118505, at

*4 (W.D. Pa. Oct. 23, 2007); *see also In re Gen. Motors,* 55 F.3d at 813; *In re*

*Prudential Ins. Co.*, 148 F.3d at 319 (explaining that the court looks to whether

counsel had an "adequate appreciation of the merits of the case"). That's because

when evaluating a proposed settlement, "the professional judgment of counsel

involved in the litigation is entitled to significant weight." *Klingensmith*, 2007 WL

3118505, at *5 (citation omitted).

As discussed, the Parties engaged in substantial discovery to allow proposed

class counsel—who have extensive experience with class action litigation

generally, and cases involving the TCPA in particular—to adequately assess the

merits of the case and the benefits of settlement versus continued litigation. (Ex. B,

Balabanian Decl. ¶¶ 4-5, 13.) Settlement also did not come quickly or on

Defendant's terms, as evidenced by the failure of the first mediation. (*Id*. ¶ 6.)

Further, the settlement discussions that preceded this Agreement were

unquestionably at arm's-length given they were presided over by Magistrate Judge

Goodman over the course of many months. (*Id*. ¶ 7.)

Accordingly, the Settlement is entitled to this presumption of fairness.

## B.   The Proposed Settlement Falls Within The Range Of Possible Approval.

In assessing whether preliminary approval should be granted, the analysis focuses on "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Prudential Ins. Co.*, 148 F.3d at 317; *see also Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 325 (E.D. Pa. 2014) (quoting *In re Prudential*, 148 F.3d at 317) (identifying additional factors that may be considered at the preliminary approval stage, including (i) the complexity, expense and likely duration of the litigation, (ii) the stage of the proceedings, (iii) the risks of maintaining the class action through trial, and (iv) the likely recovery under the circumstances of the case);

In addition to warranting a presumption of fairness, the Settlement easily satisfies these considerations as well.

### 1.   *The Proposed Settlement Provides Meaningful Recovery to the Settlement Class.*

Perhaps most indicative of its fairness and reasonableness is the anticipated $150-$250 payments to class members, whereas a claimant in a typical TCPA case receives $30 or $40. *See, e.g., In re Capital One Tel. Consumer Prot. Act Litig.*, 80

F. Supp. 3d 781, 786 (N.D. Ill. 2015) (providing $34.60 to each claiming class member); *Hashw v. Dept. Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) (approving settlement providing claiming class members in TCPA case a $33.20 payment); *Kolinek*, 311 F.R.D. at 493 (providing a roughly $30 payment for each claiming class member); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (granting approval of a settlement that provided a $25 voucher to each claiming class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261, dkt. 97 (S.D. Cal. Feb. 20, 2013) (granting approval of a settlement that provided a $20 voucher or $15 cash to each claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198, dkt. 266 (W.D. Wash. Sept. 17, 2012) (granting approval of a settlement that provided $20-40 cash payment to each claiming class member).

That alone is good support for the Court to grant preliminary approval. Thus, the relief here is fair, reasonable, and adequate, and warrants preliminary approval.

### 2. The Complexity, Expense, and Length of Continued Litigation— Coupled with the Risks Associated with Such Protracted Litigation—Favor Approval of the Settlement.

It is not just the strength of the individual recovery that warrants approval. Dobkin believes he had a strong case and would have adversarily certified a class and succeeded at summary judgment or trial. (Ex. B, Balabanian Decl. ¶ 11.) However, neither outcome was certain by any means. (*Id*.) Of greater concern,

however, if a jury were to find that NRG Residential was not vicariously liable for the phone calls—a point on which Plaintiff bears the burden of proof—then the class members would obtain no recovery at all. (*Id.*) *See Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845 JLS (BLM), 2017 WL 766548, at *8 (S.D. Cal. Feb. 28, 2017) (granting summary judgment to defendant in TCPA case on vicarious liability); *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528, 2015 WL 4477425, at *1 (D. Nev. July 20, 2015) (granting summary judgment to defendants on issues of vicarious liability in TCPA class action); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679–80 (9th Cir. 2014) (affirming grant of summary judgment to defendant finding no vicarious liability in TCPA class action).

Further, the idea of a "complete victory" is illusory where, as here, a nine-figure judgment "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790. Thus, even though Dobkin has a strong case, proceeding on the theory of vicarious liability under the TCPA would not have guaranteed victory, and any victory might well have been a hollow one. But even getting to class certification, summary judgment, and trial would be costly to the Parties. (Ex. B, Balabanian Decl. ¶ 11.) Likewise, in light of the complexity of the issues presented here and the amount in controversy, the defeated party would likely appeal, further delaying any recovery by the Settlement Class. (*Id.*) In light of these risks, the immediate and substantial relief

31

provided by the Settlement weighs heavily in favor of a finding that the Settlement

is fair, reasonable, and adequate, and well within the range of approval. (*Id*.)

### 3. *The Parties Had Sufficient Information to Assess the Proposed Settlement.*

Finally, the Settlement also warrants approval based on the stage of the

proceedings and amount of discovery completed. This factor is relevant because it

determines how fully the district court and counsel are able to evaluate the merits

of plaintiffs' claims, with the pertinent inquiry being whether the parties

"appropriately focused on the question critical to the merits of the case," even if

"factual inquiry was neither exhaustive nor protracted." *Klingensmith,* 2007 WL

3118505, at *4; *see also In re Prudential Ins. Co.,* 148 F.3d at 319 (explaining that

the court looks to whether counsel had an "adequate appreciation of the merits of

the case").

This case has been underway for over two years, and, through complicated

litigation and settlement talks, the Parties have assembled the information

necessary to fully assess the strength of Plaintiff's claims. (Ex. B, Balabanian Decl.

¶¶ 4-5.) The Parties engaged in both formal and informal discovery, and exchanged

information regarding how telephone numbers were collected and how the

telephone calls were placed. (*Id*.) Drawing on all of their conversations and

information exchanges, the Parties—with the invaluable assistance of this Court's

Magistrate Judge Goodman—were able to negotiate a meaningful Settlement for

the proposed Settlement Class, which exceeds the typical relief afforded in similar cases. (*Id.* ¶ 15.) Consequently, this factor—like the others—weighs in favor of preliminary approval.

## VII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

When, as here, a settlement class is certified under Rule 23(b)(3), the court must direct to settlement class members "the best notice that is practicable under the circumstances" informing them of the nature of the class action and their right to opt-out of the class. Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable includes "individual notice to all members who can be identified through reasonable effort." *Id.*; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). In addition, where Parties seek to settle an action on a class-wide basis, courts must direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

The Parties have agreed to disseminate notice in a manner consistent with Rule 23 and due process. (Ex. A, Settlement Agreement § 4.2; Ex. B, Balabanian Decl. ¶ 16.) NRG Residential has provided the Settlement Administrator with all of

the names, addresses, email addresses, and cellular phone numbers of the

Settlement Class. (*Id.* § 4.3(a).) The Settlement Administrator shall update the U.S.

mailing addresses contained in the Class List through the U.S. Postal Service's

National Change of Address Database prior to issuance of the Notice. (*Id.*) No later

than thirty (30) days after preliminary approval is entered, the settlement

administrator will send notice via e-mail and U.S. mail, which will direct class

members to a dedicated settlement website that the administrator will develop,

host, and manage. (*Id.* § 4.3(b)-(d).) The mailed summary notice will include a

simple claim form (with return postage pre-paid) and the email notice will contain

a link to the claim form at the settlement website. (*Id.*) Additionally, pursuant to 28

U.S.C. § 1715, NRG, through the Settlement Administrator, will serve notice of

the proposed settlement to the Attorney General of each U.S. State in which any

class members reside and to the U.S. Attorney General within ten (10) days after

the Settlement Agreement is filed with the Court. (Ex. A, Settlement Agreement, §

4.3(e).)

The format and language of each form of Notice have been carefully drafted

in straightforward, easy-to-read language, which clearly informs class members of

all the material aspects of the deal, such as the range of potential class member

recovery, class members' right to challenge the Settlement, and the amount of

attorneys' fees being sought. (Balabanian Decl. ¶ 16.) Because the proposed notice

plan effectuates direct notice to all class members identified by Defendant's records and fully apprises class members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved. (*Id.*)

## VIII.  CONCLUSION

For the reasons discussed above, Plaintiff Michael Dobkin respectfully requests that this Court enter an order (1) preliminarily certifying the proposed Settlement Class for settlement purposes, (2) naming Plaintiff as Class Representative, (3) appointing Rafey S. Balabanian and Eve-Lynn J. Rapp of Edelson PC as Class Counsel, (4) granting preliminary approval of the Settlement, (5) approving the proposed Notice Plan, (6) scheduling a final fairness hearing, and (7) providing such further relief as the Court deems just and proper.

Respectfully submitted,

**MICHAEL DOBKIN**, individually, and on behalf of a class of similarly situated individuals,

Dated: September 27, 2017

By: /s/ Stefan L. Coleman
    One of Plaintiff's Attorneys

Rafey S. Balabanian (admitted *pro hac vice*)
rbalabanian@edelson.com
Eve-Lynn Rapp (admitted *pro hac vice*)
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

35

Stefan L. Coleman
(NJ Attorney No. 000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1071 Madison Ave., Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2017, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ _Stefan L. Coleman_____